FILED _____ LODGED
_____ RECEIVED _____ COPY

MAY 0 5 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___K(7___ DEPUTY

Kevin E Green    ADC # 150869
Name and Prisoner/Booking Number

Core Civic Eloy - ASP La Palma Unit
Place of Confinement

5501 N. La Palma Rd.
Mailing Address

Eloy, AZ 85131
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

Kevin Elliot Green                ,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) State of Arizona            ,
(Full Name of Defendant)

(2) Ryan Thornell               ,

(3) Damon Hininger              ,

(4) Chris Howard                ,

Defendant(s).

☑ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-23-00586-PHX-DJH (DMF)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**
JURY TRIAL DEMANDED

☐ Original Complaint
☑ First Amended Complaint
☐ Second Amended Complaint

### A.  JURISDICTION

1.   This Court has jurisdiction over this action pursuant to:
     ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
     ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
     ☐ Other: _____

2.   Institution/city where violation occurred: Core Civic Eloy  La Palma Unit, Eloy  AZ

Revised 12/1/20

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE CIV.L.R.5.4
(Rule Number/Section)

**550/555**

1     Case Number: CV-23-00586-PHX-DJH(DMF)

2

3     Defendants

4

5     (5) Jeffrey Freeland

6     (6) Brenda Burges

7     (7) Officer Sanchez

8     (8) John Weiss

9     (9) Matthew Weidman

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.   DEFENDANTS

1.   Name of first Defendant: <u>State of Arizona</u>.   The first Defendant is employed
as: <u>Arizona Department of Corrections</u>   at <u>ASP La Palma</u>.
(Position and Title)   (Institution)

2.   Name of second Defendant: <u>Ryan Thornell</u>.   The second Defendant is employed as:
as: <u>Director of Arizona Department of Corrections</u>   at <u>Central Office</u>.
(Position and Title)   (Institution)

3.   Name of third Defendant: <u>Damon Hininger</u>.   The third Defendant is employed
as: <u>General Manager for Core Civic</u>   at <u>Core Civic Central Office</u>.
(Position and Title)   (Institution)

4.   Name of fourth Defendant: <u>Chris   Howard</u>.   The fourth Defendant is employed
as: <u>Warden for Core Civic</u>   at <u>ASP La Palma Eloy</u>.
(Position and Title)   (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C.   PREVIOUS LAWSUITS

1.   Have you filed any other lawsuits while you were a prisoner?   ☑ Yes   ☐ No

2.   If yes, how many lawsuits have you filed? <u>2</u>.   Describe the previous lawsuits:

   a.   First prior lawsuit:
      1.   Parties: <u>Unknown / Green</u>   v. <u>Arizona</u>
      2.   Court and case number: <u>Unknown</u>
      3.   Result:  (Was the case dismissed?   Was it appealed?   Is it still pending?) <u>Dismissed</u>

   b.   Second prior lawsuit:
      1.   Parties: <u>Green</u>   v. <u>Arizona</u>
      2.   Court and case number: <u>Unknown</u>
      3.   Result:  (Was the case dismissed?   Was it appealed?   Is it still pending?) <u>Dismissed</u>

   c.   Third prior lawsuit:
      1.   Parties: _____   v. _____
      2.   Court and case number: _____
      3.   Result:  (Was the case dismissed?   Was it appealed?   Is it still pending?) _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

Case Number: CV-23-00586-PHX-DJH-(DMF)

B. Defendants

5. Name of fifth Defendant Jeffrey Freeland    . The fifth Defendant is employed as: Deputy Warden for Arizona Dept. of Corrections at ASP La Palma Unit.

6. Name of Sixth Defendant Brenda Burges    . The Sixth Defendant is employed as: Assistant Deputy Warden for Arizona Dept. of Corrections at ASP La Palma Unit.

7. Name of Seventh Defendant Officer Sanchez    . The Seventh Defendant is employed as: Security/Correctional Officer for Core Civic at ASP La Palma Unit.

8. Name of Eighth Defendant John Weiss    . The Eighth Defendant is employed as: Administrator for Arizona Dept. of Corrections at ADCRR Central Office - Phoenix.

9. Name of Ninth Defendant Matthew Weidman    . The Ninth Defendant is employed as: Investigator for Core Civic at Core Civic.

2 - A

Page ____ of ____ page(s)

## D.  CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: _8th Amendment - Cruel and Unusual Punishment_

2. **Count I.** Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☑ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

   Defendant Officer Sanchez violated Plaintiff's 8th Amendment right by causing a threat to Plaintiff's safety by allowing level 4 inmates to comingle and threaten harm to Plaintiff. Officer Sanchez directly caused Plaintiff injury through his physical and mental injuries. See Supplement pg's.  . Defendant Ryan Thornell, ADC Director, violated Plaintiff's 8th Amendment right by allowing, in his custody, care, and control, Plaintiff to be placed in a dangerous circumstance and threat to his safety when level 4 inmates were allowed unrestricted access to Plaintiff. Defendant Ryan Thornell caused Plaintiff injury through his physical and mental injuries. See Supplement pg's    . Defendant Damon Hininger violated Plaintiff's 8th Amendment rights by allowing his officers to mix custody, classifications, and foster an environment of these egregious Constitutional Rights violations being acceptable through his supervisory roles. see pg's  . Defendant Hininger caused injury to Plaintiff as Plaintiff suffers physical and mental injuries after his attempt to take his own life due to that event and threat to his safety. see pg's  . Defendant State of Arizona violated Plaintiff's 8th Amendment right by failing to provide a safe and secure facility to incarcerate Plaintiff to serve his sentence. Defendant State of Arizona has a legal obligation to keep Plaintiff safe free from threats to his safety by properly classifying and housing inmates. Defendant State of Arizona allowed an incarceration contract with Core Civic whom Officer Sanchez, allowed level 4 inmates access to Plaintiff, a level 3 inmate, see pg's  . State of Arizona, Defendant, caused  (Continued on pg. 3A)

4. **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

   Plaintiff suffers physical and mental injuries related to the Threat to Safety issue, which are as follows; on or about December 30th 2022 Plaintiff attempted suicide by means of hanging himself in his cell, also Plaintiff suffers physical and mental symptoms of anxiety, depression, headaches, paranoia, and difficulty sleeping. See pg's.

5. **Administrative Remedies:** (Supporting Documentation Attached)
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I?  ☑ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?  ☑ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

1

2 D. Cause of Action

3 Count I

4 (Continued from pg. 3)

5

6 3. Supporting Facts (Continued)

7 Plaintiff injury through his attempted suicide, resulting in Plaintiff's physical and mental

8 injuries, which was caused by Defendant, State of Arizona, threat to the safety of

9 Plaintiff by being complicit and negligent in allowing level 4 inmates direct contact with

10 Plaintiff, a level 3 inmate, see pgs _____ for further supporting facts and injury.

11 Defendant Chris Howard violated Plaintiff's 8th Amendment right by his failure as the

12 Warden of Core Civic, La Palma Unit, through his officers negligence and egregious actions

13 that willfully allowed level 4 inmates direct contact with level 3 inmates, as Defendant

14 Chris Howard knowingly and willfully allowed a serious safety and security issue in his housing

15 of level 3 and level 4 inmates in the same building, Not separated by security fences or

16 other mandatory security measures. Defendants Chris Howard failure to practice sound

17 correctional judgment in housing level 3 and level 4 inmates in the same building, by

18 further failing to properly train his correctional staff on the differences in ADC custody

19 classifications and Integrated Housing Program that causes a certain class of inmates, such

20 as level 4 inmates with an Integrated Housing Code (IHC) of RP or RO, to be

21 violent, threaten violence, or cause injury to inmates with an IHC of RE, such as

22 the Plaintiff. Moreover, without the consideration being given of inmates Integrated Housing

23 designation, it is still grossly negligent for Warden Howard to allow level 4 inmates

24 to house in the same building as level 3 inmates, as level 4 inmates are, Close

25 Management inmates and are classified to the higher custody and supervision

26 due to their history of institutional violence. Defendant Chris Howard caused

27 Plaintiff injury through Plaintiff suicide attempt due to this threat to Plaintiff's

28 safety, causing severe mental anguish, depression, lack of sleep, (Continued on pg. 3B)

3A

Page ____ of ____ page(s)

Count I
Supporting Facts
(Continued)

paranoia, and through the physical injury caused by the suicide attempt. Defendant Jeffrey Freeland violated Plaintiffs 8th Amendment rights by knowingly and willfully allowing this serious and dangerous incident to occur of level 4 inmates coming in direct contact with the Plaintiff, a level 3 inmate. Defendant Freeland failed to practice sound correctional judgment, as well as failing to follow ADCRR administrative policy, by housing level 3 inmates with a more restrictive and known institutionally violent classification of inmate, level 4 inmates. This resulted in level 4 inmates threatening the life of Plaintiff. Defendant Jeffrey Freeland caused Plaintiff injury through Plaintiff's suicide attempt, which was attempted due to this incident caused severe mental anguish, depression, lack and difficulty sleeping, paranoia, and the physical injury that occurred to Plaintiff from the suicide attempt. See Supplemental attachment for further information, pgs _____ . Defendant Brenda Burges violated Plaintiff's 8th Amendment rights, threat to safety, by knowingly and willfully placing Plaintiff in imminent danger of physical injury, through her knowingly and willfully allowing Level 3 inmates to have direct contact with level 4 inmates, and housing them within the same building. Defendant Burges is complicit in her authority to recognize such threat and take immediate action to change the housing, in which she failed to do so, as did the other defendants in this case. Defendant Burges failed to practice sound correctional judgment in allowing level 4 inmates to have direct contact with Plaintiff, threaten the life of Plaintiff, and caused Plaintiff physical and mental injury through this event. see Supplemental attachments, pgs _____ . Defendant John Weiss violated Plaintiffs 8th Amendment rights by failing to remedy the Classification issue pertaining to this event.     (Continued on 3C.)

3B

## Count I
### Supporting Facts
### (Continued)

Defendant John Weiss, an ADCRR Central Office Classification Supervisor, was informed of the Constitutional violations telephonically, via telephonically, by Joyce Wallace (Plaintiffs Mother), see attached Supplemental pg. Defendant Weiss acted with deliberate indifference to the substantial risk of serious physical injury, and reckless disregard for Plaintiffs safety when he was informed of the violations and failed to remedy the housing of level 3 inmates with level 4 inmates. Defendant Weiss caused physical and mental injury to Plaintiff when Plaintiff attempted suicide due to this event and the housing and classification failing to be remedied. Defendant Weiss caused Plaintiff injury as Plaintiff suffers depression, anxiety, paranoia, lack/trouble sleeping, and headaches, resulting in a suicide attempt from this Constitutional rights violation, the threat to Plaintiffs safety. Defendant Matthew Weidman violated Plaintiffs 8th Amendment rights, threat to safety, when he was contacted by Core Civic La Palma Unit, and Joyce Wallace and made aware of the Constitutional violations, the level 4 inmates being housed with level 3 inmates, and Defendant Weidman acted with deliberate indifference and reckless disregard to Plaintiffs safety when he failed to take reasonable action to remedy the continuing constitutional violations. Defendant Weidman caused Plaintiff injury due to Plaintiffs suicide attempt which was caused by Plaintiffs depression, anxiety, paranoia, headaches, and difficulty sleeping from this violation. Defendant Weidman caused Plaintiff physical injury from the resulting suicide attempt and the physical injuries sustained. All Defendants acted knowingly and willfully to the risk of serious physical injury, the threat to safety, yet did nothing.

3C

## COUNT II

1. State the constitutional or other federal civil right that was violated: _14th Amendment - Equal Protection Clause_

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☑ Other: _Racial Discrimination_

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Defendant Officer Sanchez violated Plaintiffs 14th Amendment right to Equal Protection Clause through racial discrimination when he directed hispanic level 4 inmates to assault Plaintiff, and calling him a racial slur, see supplemental attached pgs. • Defendant Sanchez caused injury to Plaintiff, see Count I, pgs 3-3C. Defendant State of Arizona violated Plaintiffs 14th Amendment right to Equal Protection, Racial Discrimination, see Count I pgs 3-3C, and Supplemental attached see pg's • Defendant State of Arizona caused Plaintiff injury, see Count I pgs 3-3C, and Supplemental Attached pgs • Defendant Ryan Thornell violated Plaintiffs 14th Amendment right to Equal Protection, racial discrimination, see Count I pgs 3-3C, and Supplemental Attached pgs • Defendant Ryan Thornell caused Plaintiff injury, see Count I, pgs 3-3C, and Supplemental Attached. Defendant Damon Hininger violated Plaintiffs 14th Amendment right to Equal Protection, see Count I pgs 3-3C, and Supplemental Attached, pgs. Defendant Chris Howard violated Plaintiffs 14th Amendment right to Equal Protection, see Count I, pgs 3-3C, and Supplemental Attached pgs. • Defendant Jeffrey Freeland violated Plaintiffs 14th Amendment right to Equal Protection, see Count I pgs 3-3C, and Supplemental Attached pgs • Defendant Brenda Burges violated Plaintiffs 14th Amendment right, see Count I pgs. 3-3C, and Supplemental Attached. Defendant John Weiss violated Plaintiffs 14th Amendment right, Equal Protection; see Count I pgs 3-3C, and Supplemental Attached pgs. • Defendant Matthew Weidman violated Plaintiffs 14th Amendment right to Equal Protection, see Count I pgs 3-3C, and see Supplemental Attached.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   Defendant State of Arizona, Ryan Thornell, Damon Hininger, Chris Howard, Jeffrey Freeland, Brenda Burges, John Weiss, and Matthew Weidman separately and individually different caused injury to Plaintiff, see Count I pgs 3-3C and attached supplemental pgs.

5. **Administrative Remedies.** (Supporting Documentation Attached)
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☑ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count II?   ☑ Yes   ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?   ☑ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## COUNT III

1. State the constitutional or other federal civil right that was violated: 1st Amendment - Negligent in Supervision or Training of Subordinates; as it Relates to the Retaliation and Racial Discrimination.

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☒ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Defendant Officer Sanchez violated Plaintiffs 1st Amendment right to be free from retaliation, see Count 1, 3-3C, and see Supplemental Attached pgs. Defendant State of Arizona violated Plaintiffs 1st Amendment right to be free from retaliation, see Count 1 pgs 3-3C, and see Supplemental Attached pgs. Defendant Ryan Thornell violated Plaintiffs 1st Amendment right to be free from retaliation, see Count 1, pgs. 3-3C and Supplemental Attached pgs. Defendant Damon Hininger violated Plaintiffs 1st Amendment right to be free from retaliation, see Count 1, pgs 3-3C, and Supplemental Attached pgs. Defendant Chriss Howard violated Plaintiffs 1st Amendment right to be free from retaliation, see Count 1, pgs 3-3C, and Supplemental Attached. Defendant Jeffrey Freeland violated Plaintiffs 1st Amendment right, see Count 1, pgs 3-3C, and Supplemental Attached pgs. Defendant Brenda Burges violated Plaintiffs 1st Amendment right, see Count 1 pgs 3-3C and Supplemental Attached pgs. Defendant John Weiss violated Plaintiffs 1st Amendment right, see Count 1 pgs 3-3C, and Supplemental Attached pgs. Defendant Matthew Weudman violated Plaintiffs 1st Amendment right, see Count 1, pgs 3-3C, see Supplemental Attached pgs.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Defendant Officer Sanchez, State of Arizona, Ryan Thornell, Damon Hininger, Chris Howard, Jeffrey Freeland, Brenda Burges, John Weiss, and Matthew Weudman, separately and individually different caused injuries to Plaintiff, see Count 1, pgs 3-3C, and see Supplemental Attached.

5. **Administrative Remedies.** (Supporting Documentation Attached)
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

5

## COUNT IV

1. State the constitutional or other federal civil right that was violated: Arizona State Tort Claim: Negligence In Creating Threat to Safety

2. **Count IV.** Identify the issue involved. **Check only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☑ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count IV. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Defendant Officer Sanchez was negligent in creating a threat to Plaintiffs safety, see Supplemental Attached. Defendant State of Arizona was negligent in creating threat to Plaintiffs safety, see Supplemental Attached. Defendant Ryan Thornell was negligent in creating a threat to Plaintiffs safety, see Supplemental Attached. Defendant Damon Hininger was negligent in creating threat to Plaintiffs safety, see Supplemental Attached. Defendant Chris Howard was negligent in creating a threat to Plaintiffs safety, see Supplemental Attached. Defendant Jeffrey Freeland was negligent in creating a threat to Plaintiffs safety, see Supplemental Attached. Defendant Brenda Burges was negligent in creating a threat to Plaintiffs safety, see Supplemental Attached. Defendant John Weiss was negligent in creating a threat to Plaintiffs safety, see Supplemental Attached. Defendant Matthew Weidman was negligent in creating a threat to Plaintiffs safety, see Supplemental Attached. All of these Defendants acted separately, knowingly and maliciously causing Plaintiff physical injurous consequences due to each of their Grossly Negligent actions, see Supplemental Attached. See Supplemental Attached for a complete and documented summary of the supporting claims and applicable law.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Defendant Officer Sanchez, State of Arizona, Ryan Thornell, Damon Hininger, Chris Howard, Jeffrey Freeland, Brenda Burges, John Weiss, and Matthew Weidman separately and individually different, caused injury to Plaintiff, contained in - see Supplemental Attached.

5. **Administrative Remedies.** (Supporting Documentation Attached)
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Count IV? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Count IV to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

5A

## COUNT V

1. State the constitutional or other federal civil right that was violated: State Tort Claim:
Intentional and/or Negligent Infliction of Emotional Distress.

2. **Count V.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☑ Other: Intentional Infliction/Emotional Distress.
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count V. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Defendant Officer Sanchez Intentionally was Negligent in the Infliction of Emotional Distress of the Plaintiff, see Supplemental Attached. Defendant State of Arizona Intentionally was Negligent in the Infliction of Emotional Distress, see Supplemental Attached. Defendant Ryan Thrasall Intentionally was Negligent in the Infliction of Emotional Distress of the Plaintiff, see Supplemental Attached. Defendant Damon Hininger Intentionally was Negligent in the Infliction of Emotional Distress of the Plaintiff, see Supplemental Attached. Defendant Chris Howard Intentionally was Negligent in the Infliction of Emotional Distress of the Plaintiff, see Supplemental Attached. Defendant Jeffrey Freeland Intentionally was Negligent in the Infliction of Emotional Distress of the Plaintiff, see Supplemental Attached. Defendant Brenda Burges Intentionally was Negligent in the Infliction of Emotional Distress of the Plaintiff, see Supplemental Attached. Defendant John Weiss Intentionally was Negligent in the Infliction of Emotional Distress of the Plaintiff, see Supplemental Attached. Defendant Matthew Weidman Intentionally was Negligent in the Infliction of Emotional Distress of the Plaintiff, see Supplemental Attached. All of these Defendants acted separately, knowingly, and maliciously causing Plaintiff physical and mental injury as a direct result of their actions or inaction, to which they were Grossly Negligent. See Supplemental Attached for a complete and documented summary of the supporting claims, and applicable law supporting claims.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Defendant Officer Sanchez, State of Arizona, Ryan Thornell, Damon Hininger, Chris Howard, Jeffrey Freeland, Brenda Burges, John Weiss, and Matthew Weidman separately and individually different, caused injury to Plaintiff, contained in - see Supplemental Attached.

5. **Administrative Remedies.** (Supporting Documentation Attached)
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count V?  ☑ Yes  ☐ No
   c. Did you appeal your request for relief on Count V to the highest level?  ☑ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

5B

## D.  CAUSE OF ACTION

### COUNT VI

1.  State the constitutional or other federal civil right that was violated: State Tort Claim: Negligent In Supervision or Training of Subordinates.

2.  **Count VI** Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☐ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☑ Other: Negligent in Supervision of Subordinates.

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count VI  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

    Defendant Officer Sanchez was Negligent in Supervision or Training of Subordinates, see Supplemental Attached. Defendant State of Arizona was Negligent in the Supervision or Training of Subordinates, see Supplemental Attached. Defendant Ryan Thornell was Negligent in the Supervision or Training of Subordinates, see Supplemental Attached. Defendant Damon Hininger was Negligent in the Supervision or Training of Subordinates see Supplemental Attached. Defendant Chris Howard was Negligent in the Supervision or Training of Subordinates see Supplemental Attached. Defendant Chris Howard was Negligent in the Supervision or Training of Subordinates, see Supplemental Attached. Defendant Officer Freeland was Negligent in the Supervision or Training of Subordinates, see Supplemental Attached. Defendant Brenda Burgos was Negligent in the Supervision or Training of Subordinates see Supplemental Attached. Defendant John Weiss was Negligent in, creating, and the Supervision or Training of Subordinates, see Supplemental Attached. Defendant Matthew Weidman was Negligent in the Supervising or Training of Subordinates, see Supplemental Attached. All of these Defendants acted separately, knowingly, and maliciously causing Plaintiff physical and mental injury as a direct result of their actions or inactions to which they were Grossly Negligent. See Supplemental Attached for a complete and documented summary of the supporting claim and applicable law.

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

    Defendant Officer Sanchez, State of Arizona, Ryan Thornell, Damon Hininger, Chris Howard, Officer Freeland, Brenda Burgos, John Weiss, and Matthew Weidman separately and individually different, caused injury to Plaintiff, contained in - see Supplemental Attached.

5.  **Administrative Remedies:** (Supporting Documentation Attached)
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
    b.  Did you submit a request for administrative relief on Count VI  ☑ Yes  ☐ No
    c.  Did you appeal your request for relief on Count VI to the highest level?  ☑ Yes  ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.  _____

5C

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

Plaintiff demands judgment against defendants, and each of them for the following compensatory, nominal, and punitive damages, severally and jointly against all Defendants in their individual and official capacities, in all counts alleged in this complaint. The awarded amount shall be determined by a Jury Trial. Plaintiff further seeks judgment to include all reasonable attorney's fees, interest, and expenses incurred here-in. Plaintiff demands a Jury Trial in this matter. Plaintiff seeks any other entitled relief that's deemed just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   5-3-2023
_____
DATE

_____
SIGNATURE OF PLAINTIFF

John Davis
_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

Case #CV-23-00586-PHX-DJH (DMF)

# Cover Sheet
## Supplemental Attached

Kevin E. Green

V.

State of Arizona, et al.,

Person Filing: Kevin E. Green, ADOC # 150869
Address (if not protected): 5501 N. La Palma Road
City, State, Zip Code: Eloy, Az. 85131
Telephone: N/A
Email Address: N/A
Lawyer's Bar Number: N/A

For Clerk's Use Only

Representing ☑ Self, without a Lawyer  or  ☐ Attorney for  ☐ Petitioner  OR  ☐ Respondent

# SUPERIOR COURT OF ARIZONA
# IN MARICOPA COUNTY

Kevin Elliott Green
Name of Plaintiff

State of Arizona, et al.
Name of Defendant

Case Number: _____

Title:  **CIVIL COMPLAINT**
        **JURY TRIAL DEMANDED**

Plaintiff hereby submits this complaint against Defendant(s) and alleges the following:

## JURISDICTION and VENUE

1. Maricopa County Superior Court has the legal authority to hear and decide this case because: *(Check all boxes that are true.)*

   ☑ The value of this case exceeds $10,000 dollars.

   ☑ Replevin or other nonmonetary remedy will take place in Maricopa County.

   ☐ The Plaintiff resides in Maricopa County.

   ☑ The Defendant resides in Maricopa County.

   ☑ The Defendant does business in Maricopa County.

   ☐ The events, actions, or debts subject of this Complaint occurred in Maricopa County.

   ☐ Other reason: _____

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CVC10f 070118

## DISCOVERY TIER

2.  Pursuant to Arizona Rules of Civil Procedure, Rule 26.2 (c) (3), the Court should assign my case to the following tier based on the amount of damages I request.

☐ Tier 1 = Actions claiming $50,000 or less in damages.

☐ Tier 2 = Actions claiming more than $50,000 and less than $300,000 in damages,

OR  Actions claiming nonmonetary relief.

☑ Tier 3 = Actions claiming $300,000 or more in damages.

## PARTIES

3.  The Plaintiff in this case is _Kevin E. Green_

4.  The Defendant in this case is _State of Arizona; David Shinn; John Weiss; ADW Burges; DW Freeland; C.Howard; Richard Reyes; Matthew Weidman; M.Martinez; Officer Sanchez; Aragorn Valakis; Carol Wallace; and Damon Hininger._

## STATEMENT OF FACTS AND BREACH

5.  On August 3rd, 2022, at approximately 5:45 am, level 4 inmates from Cocopah Bravo pod were in the rotunda attempting to get ice.

6.  However, the level 4 inmates were instructed to lockdown so the level 3 inmates in Cocopah Charlie pod could go to recreation and to get ice from the ice machine in the rotunda.

7.  As Plaintiff and Inmate Dillon was getting ice for Cocopah Charlie pod, Officer Sanchez, who was working in Cocopah Bravo pod, approached Plaintiff and asked him if they could save some ice for his pod.

8.  Plaintiff replied, "Yes sir, no problem."

9.  As Plaintiff and Inmate Dillon continued filling up their 48 ct bucket with ice, Officer Sanchez told Plaintiff to stop filling up their bucket midway.

CVC10f 070118

Case Number:

10. Plaintiff asked Officer Sanchez as to why they needed to stop filling up their bucket with ice, to which Officer Sanchez replied that they needed to fill their buckets up too.

(If you need more space, add an attachment labeled "Statement of Facts and Breach," and continue consecutive numbering.)

## APPLICABLE LAW SUPPORTING CLAIMS

( 33. ) This Civil Complaint contains Three state Law Tort Claims, which are as follows: 1) Negligence In Creating Threat To Safety Issue; 2) Intentional and/or Negligent Infliction of Emotional Distress; and 3) Negligent In Supervision or Training of Subordinates.

( 34. ) Additionally, this Civil Complaint contains Four Federal Constitutional claims, brought under 42 USC § 1983, Filed under the Supplemental Jurisdiction of this State Court, which are as follows: 1) 8th Amendment Cruel & Unusual Punishment (Threat to Safety); 2) 14th Amendment Equal Protection Clause (Racial Discrimination); 3) 1st Amendment (Retaliation involving of Sanchez) ~~and 4) 14th Amendment (Retaliation involving Ombudsmen upon Information)~~

( 35. ) The Superior Court retains jurisdiction anytime after the Notice of Claim is filed. Mammo v. State, 138 Ariz. 528 (Ariz. Ct. App. 1982).

( 36. ) For the purposes of determining whether this Court retains jurisdiction, Plaintiff filed his Notice of Claim on or about October 15th, 2022, with the Office of the Attorney General and served copies upon named Defendants at Risk Management, Arizona Department of Corrections, and Core Civil Corrections Corporation, and therefore this Court retains jurisdiction to hear this matter.

( 37. ) Pursuant to Arizona Revised Statutes, "Any and all causes of action that may arise out of a tort caused by the director, prison officers or employees of the department, within the scope of their legal duties, shall run only against the state." See, ARS § 31-201.01(F).

( 38. ) "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v. Atkins, 487 US 42, 50 (1988).

(If you need more space, add an attachment labeled "Applicable Laws Supporting Claims," and continue consecutive numbering.)

## INJURIES

( 123. ) Plaintiff suffers physical and mental injuries related to the Threat to Safety issue, which are as follows: on or about December 26th, 2022, Plaintiff attempted suicide by means of hanging himself in his cell. Also Plaintiff suffers physical and mental symptoms of anxiety and depression, such as, headaches, restricted breathing, uncontrolled sweats, difficulty sleeping and nightmares, paranoia, and other harms.

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

CVC10f 070118

( 124. ) Plaintiff also suffers a deprivation of his 8th Amendment right to the US Constitution and Article II, § 15 right to the Arizona Constitution, as well as Plaintiff's right to not be inflicted with State Tort injuries of Negligence, Intentional and/or Negligent Infliction of Emotional Distress, and Negligent in Supervision or Training of Subordinates, as it relates to the Threat to Safety issue.

( 125. ) Plaintiff suffers physical and mental injuries related to the Retaliation and Racial Discrimination issue, which are as follows: on or about December 30th 2022, Plaintiff attempted suicide by means of hanging himself in his cell. Also Plaintiff suffers physical and mental symptoms of anxiety and depression, such as, headaches, restricted breathing, uncontrolled sweats, difficulty sleeping and nightmares, paranoia, and other harms.

( 126. ) Plaintiff also suffers a deprivation of his 1st and 14th Amendment rights to the US Constitution and Article IV, §§ 4 and 5 rights to the Arizona Constitution, as well as Plaintiff's right to not be inflicted with State Tort injuries of Negligence, Intentional and/or Negligent Infliction of Emotional Distress, and Negligent in Supervision or Training of Subordinates, as it relates to the Retaliation and Racial Discrimination issue.

( ___ )

(If you need more space, add an attachment labeled "Injuries," and continue consecutive numbering.)

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against defendant(s), and each of them (if applicable) for the following dollars, interest, costs and expenses incurred herein, or non-monetary remedy, including reasonable attorneys' fees, and for such other and further relief as the Court may deem just and proper.

( 127. ) Plaintiff is seeking a trial by Jury on each State Tort claim and Federal Supplemental Jurisdiction Constitutional claim raised in this Civil Complaint;

( 128. ) Plaintiff is seeking compensatory, nominal and punitive damages, as to all claims, against the State of Arizona, and all named Adoc and Corr. CXllc Officials in this Complaint, jointly and severally, in the amount of $7,000,000.00 (seven million dollars).

( 129. ) Plaintiff is seeking for pre-judgment and post-judgment interest and recovery of cost, including any reasonable attorney fees;

( 130. ) Plaintiff is seeking any other entitled relief that is deemed just and proper.

(If you need more space, add an attachment labeled "Demand for Relief," and continue consecutive numbering.)

Dated this 1-16-2023.
*(Date of signature)*

*(Signature of Plaintiff or Plaintiff's Attorney)*

© Superior Court of Arizona in Maricopa County
ALL RIGHTS RESERVED

Page 11

CVC10f 070118

## STATEMENT OF FACTS AND BREACH

1  (11). Plaintiff informed Officer Sanchez that his pod had one bucket, compared to their three buckets and that

2  the ice machine was full, so there was enough ice for everyone to fill up their buckets.

3  (12). As Inmate Dillun continued filling up the rest of their bucket with ice, Plaintiff told Officer Sanchez

4  that everyone is equal and his pod is not superior over Cocopah Charlie pod on getting ice.

5  (13). This infuriated Officer Sanchez and he stated that Plaintiff's pod would never get ice again.

6  (14). Plaintiff told Officer Sanchez that he was going to file a grievance against him.

7  (15). Officer Sanchez stormed off saying, "mayeta," (which translates from Spanish to English as "Nigger"),

8  and pushed his button to open Cocopah Braun pod door, which Sanchez intentionally let out two

9  hispanic descent level 4 inmates out into the rotunda.

10  (16). Pursuant to Department Order 702 policy, level 4 inmates are forbidden to be around level 3 inmates,

11  which would include level 4 inmates being in the rotunda with level 3 inmates.

12  (17). Upon information and belief, Officer Sanchez intentionally and knowingly let out the two level 4 hispanic

13  descent inmates with the intent of having them attack Plaintiff, who's a level 3 african-american

14  inmate, causing Plaintiff serious bodily harm and/or death.

15  (18). Based upon the foregoing, Officer Sanchez deliberately placed Plaintiff's life, safety, in immediate danger

16  when he allowed the two level 4 inmates to enter the rotunda, when Plaintiff was in the rotunda

17  getting ice.

18  (19). On August 3RD, 2022, Plaintiff filed a Inmate Informal Complaint Resolution concerning the Threat to

19  Safety issue.

20  (20). On August 11th, 2022, COIII Jennifer Gulstrap responded to Informal Complaint #22-043711 stating, "The

21  Informal Complaint dated August 3, 2022, received on August 3, 2022, has been reviewed. Allegations

22  of staff misconduct are taken seriously and have been forwarded to Administrative Staff. Allegations

23  of staff misconduct are treated confidentially and you will not be notified of the outcome, or any

24  corrective active that may have been taken. This matter is resolved at the Informal level."

25  (21). On August 15th, 2022, Plaintiff filed Inmate Grievance #22-043711 concerning the Threat to Safety

26  issue, and requested to be compensated for his mental distress and to be reclassed to a level 2, and

27  moved to Eagle Point in Buckeye, Arizona.

28  (22). On September 1st, 2022, Argero Volakis responded to Inmate Grievance #22-043711, stating, "The

1  Inmate grievance dated 8/15/2022, received 8/19/2022, has been reviewed. Within the inmate grievance,

2  you have cited legislative cases and stated that the Core Civic Officer acted with deliberate

3  indifference to your safety, violated department order and that Core Civic administration have

4  turned their head and ignored your complaints and concerns. Your proposed resolution is that

5  Level 3 inmates be moved away from Level 4 inmates, for you to be compensated for the

6  mental distress and for you to be reclassified to a Level 2 and sent to Eagle Point in Buckeye.

7  A review of the informal stage and processes reflect that the allegation of staff misconduct

8  was forwarded to administrative staff and the investigation was completed. You will not be

9  advised of the outcome of that investigation nor any action possibly taken with staff.

10  Compound 2 has opened as of today, 9/6/2022, for the housing of Level 3 inmates. The facility

11  is in the process of moving all Level 3 inmates to Compound 2 which will eliminate the need

12  for secure movements of Level 3 inmates on the Level 4 Compound 1 yard. It is out of the

13  jurisdiction of LPCC Grievance to address compensation for mental distress, classification

14  level or transfer to another facility. This matter is resolved."

15  (23). Core Civic Deputy Warden Carol Wallace, approved Argero Volakis' response to Inmate

16  Grievance #22-043711.

17  (24). On September 1st 2022, Plaintiff filed Inmate Grievance Appeal #22-043711, concerning the Threat

18  to Safety. Be advised that Plaintiff submitted his Inmate Grievance Appeal before he received

19  the response to his Inmate Grievance because the Prison Officials were out of the time frame

20  to file a response and pursuant to Department Order policy, Plaintiff could proceed onto the

21  next stage of the grievance process. As of to date, Plaintiff has not received a response

22  back to his Inmate Grievance Appeal.

23  (25). Pursuant to Department Order 802.7.08.74, "Within 30 calendar days of receiving the Inmate

24  Grievance Appeal, the Legal Services Appeals Officer shall prepare a response and submit it in

25  ACIS to the General Counsel or designee for signature. Once signed by the General Counsel, the

26  response shall be returned to the unit Co IV Grievance Coordinator in ACIS." "If an inmate

27  does not receive a written response within the time period specified, his/her time to proceed

28  to the next stage of the grievance process is the same as if he/she had received a

1  response. The time to proceed to the next stage of the grievance process begins to run the day
2  after a written response was due back to the inmate." See, D.O. 802.1.0.5.1.11.1. "The decision
3  of the General Counsel or designee is final and constitutes exhaustion of all remedies within
4  the Department." See, D.O. 802-7.0 & 7.6. Plaintiff exhausted all administrative remedies to the highest level.
5  (26). On August 3RD 2022, Plaintiff contacted a family member, Cecelia Garcia, via telephonically, to
6  report to her the Threat to Safety Issue, where Officer Sanchez intentionally pitted two hispanic
7  inmates against him, with the intentions of assaulting him, in-which Ms Garcia in-turn
8  contacted an unidentified lieutenant at Core Civic to report her concerns of Officer Sanchez's
9  conduct and of having Plaintiff housed around level 4 inmates.
10 (27). On or about August 5TH 2022, Matthew Weidman, the Internal Investigator for Core Civic
11 La Palma facility, contacted Cecelia Garcia, via telephonically, to follow-up with her complaint
12 she made with the unidentified lieutenant. Ms Garcia informed Weidman of her concerns
13 of Officer Sanchez's threatening and unprofessional conduct towards Plaintiff, as well as Plaintiff
14 being housed around level 4 inmates. Mr Weidman proceeded to ask Ms Garcia information
15 about Plaintiff's Mother, which Ms Garcia initiated a conference call with Plaintiff's
16 Mother, Joyce Wallace, and Weidman. Joyce Wallace informed Weidman of the substantial
17 risk of serious harm to Plaintiff, by housing him in the same building and compound as
18 level 4 inmates. Ms Wallace informed Weidman that she was a retired ADOC officer who was
19 well versed in ADOC policy and that Core Civic was in direct violation of ADOC policy by
20 housing level 3 inmates around level 4 inmates, where the different classification of inmates
21 came in contact with eachother. Ms Wallace further informed Weidman that Plaintiff was
22 forced to testify at his trial, which in essence incriminated Plaintiff's codefendant, in-order to
23 rebuke Plaintiff's codefendant's false testimonial plea deal—where the codefendant gave
24 false incriminating statements about Plaintiff, and although Plaintiff's testimony had no
25 effect on codefendant's plea deal, such would still be considered "snitching" in the eyes of
26 inmates, requiring Plaintiff to request for Protective Custody upon entering ADOC, due to the
27 "snitch" jacket placed on him, however ADOC denied Plaintiff's request for Protective Custody,
28 thus creating a Threat to Safety Issue for Plaintiff. Ms Wallace requested that Plaintiff be moved

1    immediately from La Palma facility in fear of Plaintiff's safety of being housed around level 4

2    inmates, who are consistently allowed access to Plaintiff, further creating a threat to safety

3    issue for Plaintiff. Mr Weidman told Ms Wallace, that he did not have the authority to

4    move Plaintiff off the La Palma facility, however that he would notify the proper officials

5    that did have the authority to move Plaintiff.

6    (28). Matthew Weidman acted with deliberate indifference and/or reckless disregard to Plaintiff's

7    safety, when he failed to take reasonable action to remedy the continuing Constitutional

8    violations and Tort violations.

9    (29). On or about August 3rd, 2022, Plaintiff's Mother, Joyce Wallace, contacted, John Weiss, an ADoc

10    Central Office Classification Official, via telephonically, informing Weiss of the substantial risk

11    of serious harm to Plaintiff by housing him in the same building and compound as level 4

12    inmates, and of Officer Sanchez's conduct.

13    (30). John Weiss acted with deliberate indifference and/or reckless disregard to Plaintiff's safety,

14    when he failed to take reasonable action to remedy the continuing Constitutional violations

15    and Tort violations.

16    (31). On or about August 8th, 2022, Plaintiff was called to Compound 1 Medical to speak with Special Security

17    Unit ("SSU") Officer M. Martinez and Internal Investigator Matthew Weidman. Officer M. Martinez and

18    Matthew Weidman proceeded to inform Plaintiff that his mother called with concerns about his safety

19    and asked Plaintiff if he was having problems with inmates in his pod. Plaintiff informed both

20    Officer M. Martinez and Matthew Weidman that the issue has nothing to do with inmates in his pod,

21    but about Officer Sanchez intentionally putting two level 4 Hispanic inmates against him by letting

22    them out into the rotunda at the same time that he was in the rotunda getting ice, with the

23    intentions of having those inmates attack him and cause serious bodily injury, and/or leading

24    up to death. Plaintiff informed Martinez and Weidman that Officer Sanchez was racially

25    discriminatory towards him because Sanchez called him a "Mayeta," which translates from Spanish

26    to English as a "Nigger," given Sanchez is a Hispanic individual and Plaintiff is an African-

27    American individual. Plaintiff further informed Martinez and Weidman that he was not even

28    supposed to be housed around level 4 inmates and that Core Civic and ADoc is creating a threat to

Case Number:

1   Safety issue, by housing him with the level 4 inmates, which violates his constitutional rights.

2   Plaintiff informed Martinez and Weidman how he had to testify at his trial, in order to rebut his

3   codefendants misleading testimonial plea that incriminated him (Plaintiff), which in-turn put a

4   "snitch" jacket on him, and even though he requested for Protected Custody upon entering ADCC, he

5   was denied, which creates a significant threat to safety issue for him, especially housing him around

6   level 4 General Population inmates. Plaintiff requested that he be moved immediately from La Palma

7   facility because he feared for his safety being housed around level 4 inmates. Martinez and Weidman

8   both informed Plaintiff that they did not have the authority to move him from La Palma and

9   proceeded to question Plaintiff about who had drugs in his pod and what was going on in his pod.

10  Plaintiff told Martinez and Weidman that he was not there to talk about drugs or what's going

11  on in his pod, but rather he was there to talk about him being housed around level 4 inmates, how

12  that violates his constitutional rights, and how he's in fear of his safety and wants to be moved off

13  the La Palma facility immediately. Martinez and Weidman attempted to question Plaintiff about

14  what was going on in his pod and about drugs, which Plaintiff told them, "We're not here to talk

15  about that," and at that juncture, the meeting ended and Plaintiff went back to his pod.

16  (32). DSU Officer M. Martinez and Internal Investigator Matthew Weidman acted with deliberate

17  indifference and/or reckless disregard to Plaintiff's safety, when they both failed to take reasonable

18  action to remedy the continuing Constitutional violations and Tort violations.

Case Number: _____

## APPLICABLE LAW SUPPORTING CLAIMS

(39). This is true even if the public employee is abusing or exceeding their authority or violating the law, because the "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action take 'under color of state law.'" Monroe v. Pape, 365 US 167, 184 (1961) (quoting, US v. Classic, 313 US 299, 326 (1941)).

(40). There are various ways personal involvement can be shown. A defendant can be held liable if: "(1) the defendant participated directly in the alleged constitutional violation (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

(41). Additionally, "Supervisors can be held liable for the actions of their subordinates (1) for setting in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a 'reckless or callous indifference to the rights of others.'" Al-Kidd v. Ashcroft, 580 F.3d 949, 9(?)-65 (9th Cir 2009).

(42). Under the doctrine of respondent superior, a party can raise their State Tort claims against State or local government rather than an individual prison employee. Longin by Longin v. Kelly, 875 F.Supp. 196, 201-02 (S.D.N.Y. 1995).

(43). A separate claim is not required when the same continuing nuisance is the cause of the injuries, and when the continuing condition is the subject of a lawsuit pending with the Court after the initial compliance with the claims statute. Graber v. Peoria, 156 Ariz. 553 (Ariz. Ct. App. 1988).

(44). According to the Arizona Revised Statutes ("ARS"), as it pertains to State Tort Claims, "Persons who have claims against a public entity, public school or a public employee, shall file claims with the person or

Case Number

1  persons authorized to accept service for the public entity, public school or public employee as set

2  forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action

3  accrues. The claim shall contain facts sufficient to permit the public entity, public school or public

4  employee to understand the basis on which liability is claimed. The claim shall also contain a specific

5  amount for which the claim can be settled and the facts supporting that amount. Any claim that is

6  not filed within one hundred eighty days after the cause of action accrues is barred and no action

7  may be maintained thereon." See, ARS § 12-821.01 (A).

8  (45) "For the purposes of this section [ ARS § 12-821.01], a cause of action accrues when the damaged party

9  realizes he or she has been damaged and knows or reasonably should know the cause, source, act,

10  event, instrumentality or condition that caused or contributed to the damage." See, ARS § 12-821.01 (B).

11  (46) "Notwithstanding subsection A [ of ARS § 12-821.01], any claim that must be submitted to a binding or

12  nonbinding dispute resolution process or an administrative claims process [ or review process

13  pursuant to a statute, ordinance, resolution, administrative or governmental rule or regulation or

14  contractual term shall not accrue for the purpose of this section until all such procedures, processes or

15  remedies have been exhausted. The time in which to give notice of a potential claim and to sue on

16  the claim shall run from the date on which a final decision or notice of disposition is issued in an

17  alternative dispute resolution procedure, administrative claim process or review process. This subsection

18  does not prevent the parties to any contract from agreeing to extend the time for filing such notice of claim." See,

19  ARS § 12-821.01 (C).

20  (47) "All actions against any public entity or public employee shall be brought within one year after the

21  cause of action accrues and not afterward." See, ARS § 12-821.

22  (48). The State Compensation Fund is a public entity as defined in ARS § 12-821 and ARS § 12-821.01 and claims

23  against the Fund must comply with both statutes. State Compensation Fund v. Superior Court 180 Ariz. 371 Ariz. Ct. App. 1991.

24  (49) Pursuant to Arizona Department of Corrections Department Order 802.7.4, "Within 30 Calendar

25  days of receiving the Inmate Grievance Appeal, the Legal Service Agents Officer shall

26  prepare a response and submit it in ACIS to the General Counsel or designee for

27  signature. Once signed by the General Counsel, the response shall be returned to the unit

28  COIII Grievance Coordinator in ACIS."

1  (50). Furthermore, "If an inmate does not receive a written response within the time period specified,

2  his/her time to proceed to the next stage of the grievance process is the same as if he/she had

3  received a response. The time to proceed to the next stage of the grievance process begins to

4  run the day after a written response was due back to the inmate." See Department Order

5  802.1.0 1.11.1, "The decision of the General Counsel or designee is final and constitutes exhaustion

6  of all remedies within the Department." (Id at 802-7 & 7.6).

7  (51). In determining whether Plaintiff has complied with both statutory requirements in ARS § 12-821 and

8  ARS § 12-821.01, you will find that he has, because he filed his Inmate Grievance Appeal on September 6th

9  2022, which according to ADOC D.O. 802.7.0 & 7.4 Policy, the Legal Service Appeals Officer had 30 days to

10  prepare a response, obtain a signature from the General Counsel, and return the response back to the

11  unit COIV Grievance Coordinator in ACIS, which would make the due date October 6th 2022. However,

12  as of October 15th 2022, Plaintiff has not received any response back to his Grievance Appeal and

13  therefore he filed and served a Notice of Claim upon Defendants. The 180 day statutory deadline

14  to file a Notice of Claim would be April 4th 2022, which Plaintiff filed his on October 15th 2022,

15  thus meeting the statutory deadline. The 1 year statutory deadline to file a Civil Complaint

16  against Defendants would be October 6th 2023, which this Complaint is filed well within the

17  statutory deadline, thus meeting said deadline.

18  (52). Plaintiff has exhausted all administrative remedies to the highest level, which has lead to no avail,

19  and has complied with all statutory deadlines in filing his Notice of Claim and Civil Complaint.

20  (53). "Prison walls do not form a barrier separating prison inmates from the protections of the

21  constitution," Turner v. Safley, 482 US 78, 84 (1987), however "when a prison regulation impinges on

22  inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

23  penological interest." (Id at 89).

24  (54). The Constitution requires prison officials to provide "reasonable safety" for prisoners, Farmer v. Brennan,

25  511 US 825, 844 (1994), which means prison officials must take reasonable measures to protect

26  prisoners from assaults by other inmates, (Id at 833), and when they fail to do so, Courts may award

27  damages to injured prisoners see, e.g., Cantu v. Jones, 293 F.3d 839, 837-44 (5th Cir. 2002);

28  Hutchinson v. McAbee, 168 F.Supp.2d 101, 102-04 (S.D.N.Y. 2001); Miller v. Shelby Cnty. 93 F.Supp.2d 892902 (W.D.Tenn 2000).

Case Number _____

1  (55). In order for officials to be held deliberate indifference towards a prisoners safety, the

2  prisoner must show that prison officials displayed "deliberate indifference" or "reckless

3  disregard" for their safety by failing to "act reasonable" in response to danger. Farmer, 511 US

4  at 834-47. This means that prisoners must show that prison personnel "[knew] of and

5  disregard[ed] an excessive risk to inmates health or safety; the official must both be aware of facts

6  from which the inference could be drawn that a substantial risk of serious harm exists, and he

7  must also draw the inference." (Id at 837).

8  (56). The Constitution is violated "where defendants know of the danger or where the threat of

9  violence is so substantial or pervasive that their knowledge could be inferred, and yet

10  defendants fail to embrace a policy or take other reasonable steps which may have prevented

11  harm." Goka v. Bobbitt, 862 F2d 646, 651 (7th Cir 1988).

12  (57). When the evidence that a risk is obvious, a judge or jury can conclude that defendants had actual

13  knowledge of it. Farmer, 511 US at 842-43.

14  (58). Defendants do not have to know the precise nature of the risk, as long as they know there is a

15  serious risk to the prisoners safety. Velez v. Johnson, 345 F3d 732, 736 (7th Cir. 2005).

16  (59). Officials do not have to harbor a purpose of harming prisoners, or believe that it will actually

17  occur, as long as they have actual knowledge of the risk. Farmer, 511 US at 836, 842.

18  (60). In order for prison officials to be held liable, they must disregard a risk that is "excessive" or

19  poses a "substantial risk of serious harm." (Id at 834, 837).

20  (61). Courts have held when prison officials release prisoners with the hopes that they would attack

21  another prisoner, such would support an Eighth Amendment claim. Montero v. Crusie, 153 F.Supp.2d 368,

22  374-77 (S.D.N.Y. 2001).

23  (62). Officials failure to follow their own rules, regulations or policies concerning protection of prisoners

24  may support a deliberate indifference claim. Pierson v. Hartley, 391 F3d 898, 903-04 (7th Cir. 2004).

25  (63). Additionally, the lack of prison policy addressing a particular problem may be evidence of

26  deliberate indifference. A.M. v. Luzerne Cnty. Juvenile Detn. Center, 372 F3d 572, 583 (3d Cir. 2004).

27  (64). The Supreme Court held "it does not matter whether the risk comes from a single source or

28  multiple sources, any more than it matters whether a prisoner faces an excessive risk

Case Number _____

1    of attack for reasons personal to him or because all prisoners in his situation face such a

2    risk." Farmer, 511 US at 843.

3    (65). Prison officials may be found deliberate indifference if they fail to protect prisoners who are

4    obvious victims, (Id at 825), or who have been identified as at risk, Johnson v. Johnson,

5    385 F.3d 503, 526-27 (5th Cir. 2004); Gurror v. Somerset Cnty., 178 F.3d 28, 30, 33 (1st Cir. 1999) (or if they place

6    a prisoner in a situation of danger from others who are known to be aggressive and violent,

7    Hearns v. Terhune, 413 F.3d 1036, 1041 (9th Cir. 2005); Robinson v. Prunty, 249 F.3d 862, 866-67

8    (9th Cir. 2001).

9    (66). Prison officials may be held liable if they fail to act on a specific warning of danger to a

10    particular prisoner. Case v. Ahitow, 301 F.3d 605, 606-07 (7th Cir. 2002); Hunt v. Kentucky Dept. of Corr.,

11    270 F.3d 341, 353-54 (6th Cir 2001); Young v. Quinlan, 960 F.2d 351, 363 (3d Cir 1992).

12    (67). Furthermore, negligence is defined as "the failure to use such care as a reasonably prudent and

13    careful person would use under similar circumstances," see, Black's Law Dictionary at 930 (6th Ed. 1990).

14    (68). To constitute negligence, an act must violate a "duty of care" owed to the injured person, and

15    it must cause harm that is "within the class of reasonably foreseeable hazards that the duty

16    exists to prevent." see, Sanchez v. State of New York, 99 N.Y.2d 247, 252 (N.Y. 2002)(discussing

17    foreseeability); see also, Downey v. Denton Cnty, Tex., 119 F.3d 381, 378-88 (5th Cir 1997) (same).

18    (69). In general, prison officials owe prisoners a duty of care to protect them from risk that as

19    prisoners, they have diminished ability to protect themselves from. Sanchez, 99 N.Y.2d at 252.

20    (70). Courts have held that inmate assaults caused by prison officials negligence may be torts under

21    state law. It's generally recognized that there is a tort duty on the part of prison authorities to

22    protect prisoners from assaults by other prisoners. Giraldo v. Cal. Dept. of Corr. and Reh., 168 Cal. App 4th 231,

23    246-53 (2008) (and cases and treaties cited; Sanchez v. State, 831 N.Y.S.2d 338, 339 (N.Y. App. Div., 2007).

24    (71). Prison officials are negligent if they fail to exercise "reasonable" or "ordinary" care to protect

25    prisoners from assaults. Frett v. Gov. of Virgin Island, 839 F.2d 968, 975-76 (3d Cir. 1988);

26    McGill v. Duckworth, 726 F.Supp. 1144, 1157 (N.O. Ind. 1989), rev'd on other grounds, 944 F.3d 344 (7th Cir. 1991).

27    (72). Negligence is generally considered easier to prove than deliberate indifference, since simple

28    carelessness by prison personnel may establish negligence. Davidson v. Cannin, 474 US 344, 346-47 (1986);

1   Rongolan v. City of Nassau, 217 F.3d 77, 79-80 (2d Cir. 2000); Davis v. Pringle, 642 F.Supp. 171, 177-78 (N.D.Ga. 1986).

2   (73). Acts or omissions that do constitute deliberate indifference will usually be negligent as well.

3   Ashford v. Dist of Columbia, 306 F.Supp. 2d 8, 14-15 (D.D.C. 2004).

4   (74). Negligence is generally proven when the act by prison officials violates a "duty of care" that's owed to

5   the injured person, which such harm inflicted was "within the class of reasonably foreseeable hazards

6   that the duty exists to prevent." Sanchez, 99 N.Y.S. 2d at 254; see also, Devaney, 119 F.3d at 387-88.

7   (75). If protective measures prove inadequate in practice, officials are obligated to take further

8   action. Jenson v. Clarke, 94 F.3d 1191, 1200-01 (8th Cir. 1996).

9   (76). Simply, refusing to place a prisoner in protective custody or removing them from it, may

10   constitute deliberate indifference. Hamilton v. Leavy, 117 F.3d 742, 748 (3d Cir. 1997); Hutchinson,

11   168 F.Supp. 2d at 103; Mayoral v. Sheahan, 345 F.3d 934, 940 (7th Cir. 2003); Hill v. Godinez, 955 F.Supp. 945,

12   949 (N.D. Ill, 1997).

13   (77). Moreover, the failure to discipline officers or to investigate complaints generally involve long-term

14   practices and not split-second decisions and claims based on such policies or practices are similar to

15   prison "conditions of confinement" cases, in which the prisoner need only prove deliberate indifference.

16   When governmental officials process is "structured to curtail disciplinary action and stifle

17   investigations," Beck v. City of Pittsburgh, 89 F.3d 966, 974 (3d Cir. 1996), or there is an inadequate

18   investigation of complaints against officials, such would support a municipal liability.

19   Depew v. City of St. Marys, Ga., 787 F.2d 1496, 1499 (11th Cir. 1986).

20   (78). Maintaining or tolerating a "code of silence" about staff misconduct can support supervisory or

21   municipal liability. Sledd v. Lindsay, 102 F.3d 282, 289 (7th Cir. 1996); Madrid v. Gomez, 889 F.Supp. 1146,

22   1156-57, 1199-1200, 1251 (N.D. Cal. 1995).

23   (79). When officials fail "to investigate or correct constitutional violations, [such] supports... that there is a policy or

24   custom which led to violation of the inmate's rights." Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001).

25   (80). "To state a claim against a supervisory official, the civil rights complaint must allege that the supervisory

26   official personally participated in the constitutional deprivation or that the supervisory official was aware of

27   widespread abuses and, with deliberate indifference to the inmates constitutional rights, failed to take

28   action to prevent further misconduct." Ray v. Caruso, 2009 WL 4730935, *3 (E.D. Mich, July 22nd, 2009).

Case Number

1  (81). There is also a tort of Intentional Infliction of Mental or Emotional Distress, which requires

2  proof of (1) extreme and outrageous conduct; (2) that intentionally or recklessly, (3) causes emotional

3  distress, (4) which must be severe. White v. Ottinger, 442 F.Supp. 2d 836, 851 (E.D. Pa. 2006). Some state

4  Courts have also recognized the tort of Negligence Infliction of Emotional Distress, which requires

5  proof of (1) that Defendants acted negligently, (2) that Plaintiff suffered either a physical impact

6  or was within the "zone of danger" of the defendants' actions, and (3) that Plaintiff suffered emotional

7  distress that was "serious and verifiable." Bernstein v. Roberts, 405 F.Supp. 2d 34, 41-42 (D.D.C., 2005).

8  (82). The 14th Amendment to the US Constitution and Article II § 13 to the Arizona Constitution provides

9  prisoners equal protection challenges to discrimination based upon race. See, 14th Amend. U.S Const.;

10  Art. II § 13 Ariz. Const. 1

11  (83). In Johnson v. California, the Supreme Court held that prison racial discrimination is subject to

12  strict scrutiny, and that government must prove that racial classifications "are narrowly tailored

13  measures that further compelling governmental interests," even when prison officials claim they

14  are necessary to control violence. Johnson v. California, 543 U.S 499, 506-07, 509-15 (2005).

15  (84). The Johnson Court further said that the principal of deference to prison officials' judgment does

16  not apply to cases involving racial discrimination. (Id. at 509-14).

17  (85). Needless to say, the Supreme Court has held that racial discrimination cannot be justified by

18  meeting the Turner v. Safely, 482 U.S 78, 89 (1987), standard. Johnson, 543 U.S at 509-14.

19  (86). Most equal protection claims involve an allegation that the plaintiff, because of his membership in

20  some group or category, has been treated unequally compared to persons who belong to some other

21  group or category, and in such case, the plaintiff must be clear about what the groups are that

22  he says are treated differently. Trujillo v. Williams, 465 F.3d 1210, 1228 (10th Cir. 2006).

23  (87). However, under current law, a prisoner need not be a member of a group or class that is discriminated

24  against, in order to state an equal protection claim. The Supreme Court has held that an individual

25  who claims he has been treated differently, intentionally and without rational basis, from others

26  similarly situated, has stated an equal protection claim based upon a "class of one."

27  Village of Willowbrook v. Olech, 528 U.S 562, 564-65 (2000).

28  (88). The "class of one" equal protection claims are evaluated under the rational basis test. Brzych v. Frank,

1  340 F.Supp.2d 955, 970 (W.D. Wis. 2004), reconsideration denied on other grounds, 2004 WL 2491597

2  (W.D.Wis., Oct 28th 2004).

3  (89). Plaintiff must show that he was not only badly treated, but also that other similarly situated prisoners

4  are not treated the same way. Alicea v. Howell, 387 F.Supp.2d 227, 236 (W.D.N.Y., 2005).

5  (90). The First Amendment to the US Constitution and Article II, § 5 to the Arizona Constitution protects "the

6  right of the people, peaceably to assemble, and to petition the Government for a redress of grievance."

7  See, U.S. Const. Amend. I; see also, Ariz Const. Art. II, § 5.

8  (91). "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of

9  free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); accord, Crawford-El v. Britton, 583 US 574,

10  588 n.10 (1998).

11  (92). Grievances filed through an official grievance procedure are constitutionally protected. Haskins v. Lepear,

12  395 F.3d 372, 375 (7th Cir. 2005) (per curiam).

13  (93). Courts have consistently held that a retaliation claim must allege: "(1) that the speech or conduct at

14  issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that

15  there was a causal connection between the protected speech and the adverse action." Espinal v. Goord,

16  558 F.3d 119, 128 (2d Cir. 2009); accord, Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

17  (94). To support a retaliation claim, the adverse action must be sufficient to deter or "chill" a person

18  of "ordinary firmness" in the exercise of the constitutional right, however there does not have to

19  be a showing that the official's action actually deterred the inmate from exercising his rights.

20  Rhodes v. Robinson, 408 F.3d 559, 568-69 (7th Cir. 2005).

21  (95). Here, on or about April 5th, 2022, Plaintiff and approximately 60 other level 3 inmates arrived at the

22  La Palma facility and were housed in Apachi Charlie pod.

23  (96). On or about April 20th, 2022, Defendant's widespread of Intentional and/or Negligent infliction to

24  Plaintiffs Threat to Safety began, when Defendants accepted several level 4 inmates to the La Palma

25  facility and housed them in Apachi Alpha and Delta pods, which happen to be in the same building

26  as Apachi Charlie pod.

27  (97). The level 4 inmates housed in Apachi Alpha and Delta pods could see the level 3 inmates housed in

28  Apachi Charlie pod, and on a daily bases, the level 4 inmates threaten, harassed, and heckled at the

1  level 3 inmates. Such threats and harassment was repeatedly reported to prison officials, however
2  nothing was ever done about it, and it was at the juncture of the level 4 inmates being housed in the
3  same building as the level 3 inmates, that Plaintiff and all other level 3 inmates became imprisoned
4  in prison at the hands of the level 4 inmates.
5  (98). Upon information and belief, ADOC Officials and Core Civic Officials intentionally designed a plan to
6  house higher level custody inmates, level 4 inmates and/or level 5 inmates who are overridden
7  to a level 4 custody, in the same building as lower custody inmates, such as, level 3 inmates
8  and/or level 2 inmates who are overridden to a level 3 custody.
9  (99). Pursuant to ADOC Department Order 704.8.0, Inmate Housing Assignments, "Wardens, Deputy Wardens
10 and private prison Wardens or Deputy Wardens shall ensure inmates housing assignments yield the
11 highest degree of safety possible when housing inmates in cells or dormitories." (Id at § 8.1). "The
12 assigned custody level (Low, Minimum, Medium, High, and Maximum) and the assigned Internal Risk
13 Level (1-5) shall be the primary criteria for all rated, temporary and special use housing to include
14 detention units, Medical and Mental Health Units, Minor Units, transitory and holding area for any
15 duration." (Id at § 8.2). "The Accountability and Movement Officer shall document housing
16 assignment recommendations based on the criteria outlined in this section on the appropriate
17 ACIS screen during normal business hours." (Id at § 8.5.2). "The unit Correctional Officer IV and/or
18 the unit Chief of Security shall review the ACIS Schedule and Integrated Housing Program (IHP)
19 screen for housing recommendations and include their recommendation prior to submitting to the
20 unit Deputy Warden for final approval." (Id at § 8.5.2.1). "The unit Deputy Warden shall review the
21 ACIS Schedule screen for housing recommendations and then approve or deny housing assignments
22 and document decisions on the appropriate ACIS screen. The unit Deputy Warden shall be the final
23 approval authority for all housing assignments." (Id at § 8.5.2.2). "Low and Minimum Custody inmates
24 shall not be housed in the same cell with High or Maximum Custody inmates at any time." (Id at
25 § 8.5.3.1.1). "Low and Minimum Custody inmates may be housed with Medium Custody inmates in
26 the same double cell when there are no other beds available; their internal risk scores are
27 approximately the same; and they are otherwise similarly situated." (Id at § 8.5.3.1.2). "Medium
28 Custody inmates shall not be housed in the same cell with Maximum Custody inmates at any time." (Id at § 8.5.3.2.1).

Case Number _____

(100). ADOC and Core Civic Officials knew that Plaintiff and all other level 3 inmates were IHP inmates and that appropriately 98% of the inmates, including Plaintiff, went through the 805 process and were denied. The 805 process is ADOC Department Order policy, which is the process inmates go through when they request for Protective Custody. It's believed that this is why ADOC and Core Civic Officials developed a custom and/or policy to do "Secure moves," meaning that when a level 3 inmate is being moved from one area of the prison to another, that no level 4 inmates are to be out in the route that the level 3 inmate is going. Although this custom and/or policy was created by Defendant's, frequently this custom and/or policy was broken, thus creating a security breach and a threat to safety issue for all level 3 inmates.

(101). Here, Defendant's knew that Plaintiff had to testify at his trial, in order to rebut his codefendants false testimony he gave to receive his testimonial plea deal from the state, and in doing so, such was considered "snitching," on Plaintiff's part, even through Plaintiff's trial testimony had no bearing on his codefendants testimonial plea deal, and thus Plaintiff was forced to request for Protective Custody when arriving to prison, however, subsequently Plaintiff was denied Protective Custody and was placed in IHP, rather than General Population, which is political and what the level 4 inmates are classified as.

(102). It should be duly noted, General Population inmates practice politics within the inmate population, and any inmate that's considered "snitching" is to be severally assaulted and ran off the yard, or even worse, killed. This widespread practiced politics is known throughout the prison system, as inmate have been practicing this in General Population for decades, and therefore Defendant's cannot say that they were not aware of such inmate politics.

(103). The level 4 inmates housed at Core Civic La Palma fixed/dy have a known history of extreme violence towards prison officials and inmates, which further places Plaintiff and all other level 3 inmates in grave danger of being assaulted by level 4 inmates, given the level 4 inmates view all level 3 inmates at La Palma as being "no good" or "protective custody" inmates, which means level 4 inmates are to assault level 3 inmates on site. The examples of

Case Number

1  violence at the hands of level 4 inmates is overwhelmingly great. However, a few examples
2  are as follows: On or about August 30th, 2022, while CO III Jenny's was working in
3  Navahoe Brave pod, a level 4 inmate violently assaulted him. Then, on or about
4  August 31st, 2022, a level 4 inmate in Cocopah Apache pod feared for his life, and ran
5  into the pod office and locked himself in there, and proceeded to call ~~the~~ 9-1-1,
6  informing them that "the level 4 inmates [were] taking over the prison," to which 9-1-1
7  operator dispatched the SWAT to La Palma facility to investigate and gain control of the
8  situation. Then, on or about November 3rd, 2022, while the level 4 inmates were at
9  recreation, an inmate was violently attacked by 5 other level 4 inmates, to which the
10  inmate was seriously injured, requiring medical attention from hospital personal. Then,
11  on or about November 20th, 2022, while a level 3 inmate was at main medical, he was
12  violently assaulted by a level 4 inmate, when prison officials allowed the inmates to
13  come in contact with each other.

14  (104). It should be duly noted that Core Civic La Palma facility has had multiple inmates die in
15  their custody, since the commencement of ADOC contract to house Arizona State Prison
16  inmates within their facility. Since April 2022 to current, Core Civic La Palma facility
17  has had at least five inmates, that Plaintiff knows of die from a drug overdose,
18  after ingesting illegal street drugs, and there has been dozens, if not hundreds, of
19  inmates who have overdosed and their life was spared after receiving Narcan.

20  (105). Furthermore, Core Civic La Palma facility has a widespread practice of being understaffed,
21  thus having nine officer working two or three pods at once, creating a threat to Safety
22  issue for every inmate housed at La Palma facility, including Plaintiff. There is a
23  multitude of examples where one officer was assigned to work more then one pod at the
24  same time, however the following are just a few dates and times of officers working more
25  then one pod, thus creating a "Threat to Safety Issue":
26      (a). September 31st, 2022, Officer Williams #44017808 worked Tewa Brave and Charlie pods
27          between 10am-3pm;
28      (b). November 2nd, 2022, CO III Guidtap #42380929 worked Tewa Brave and Charlie pods

Case Number _____

between 10:30am – 6:30pm;

(c). November 5th, 2022, Officer Nelson worked Tewa Bravo and Charlie pods between 10am – 6:30pm;

(d). November 6th, 2022, Sergeant Gonzales worked Tewa Bravo and Charlie pods between 10am – 6:30pm;

(e). November 8th, 2022, CO III Glass worked Tewa Bravo and Charlie pods between 10am – 6:30pm;

(f). November 11th, 2022, Sergeant Smith worked Tewa Bravo and Alpha pods between 10am – 6:30pm;

(g). November 12th, 2022, Lieutenant Davis worked Tewa Alpha and Bravo pods between 10:30am – 6:30pm;

(h). November 18th, 2022, Officer Young worked Tewa Bravo and Charlie pods between 10am – 7pm;

(i). November 19th, 2022, Officer Alderete worked Tewa Alpha and Bravo pods between 10:30am – 6:30pm;

(j). November 20th, 2022, Officer Milam worked Tewa Alpha and Bravo pods between 10:30am – 3:30pm;

(k). November 24th, 2022, Officer Sellers #43108752 worked Tewa Alpha and Bravo pods between 10am – 10:30pm. At approximately 8am, an inmate fight happen in Tewa Bravo pod, which there was no officer present to break up the fight, and subsequently inmates had to brake up the fight.

(l). November 24th, 2022, Officer Muola worked Tewa Alpha and Bravo pods between 6:30pm – 6am. It should be duly noted that on said date through the following date, Officer Muola was out of Tewa Bravo pod for at least 45 minutes while several inmates kicked their doors at approximately 12:45am on November 25th, 2022 for a inmate down medical emergency. Medical personnel did not arrive until 1:18am and the inmate was remove, via stretcher, at 1:36am. The inmate suffered severe injuries and nearly died, due to the delay in medical response.

Case Number _____

(m). November 29th, 2022, Officer Sellers #43908252 worked Tewa Alpha, and Bravo, and Charlie pods between 10am–6:30pm

(n). December 10th, 2022, Officer Mendez worked Tewa Alpha, Bravo, and Charlie pods between 11am–3pm

(o). December 18th, 2022, Officer Roland #43809053 worked Tewa Alpha, Bravo, and Charlie pods between 10am–6pm.

(106). Due to the widespread practice of Core Civic La Palma facility being understaffed, the Assistant Chief of Staff (Lefebvre) quits working for Core Civic, and before quitting stated to COIII Stesman that "My supervisors are going to get inmates hurt or killed here."

(107). Furthermore, Core Civic La Palma facility has a widespread practice of allowing prison officials to pit level 4 inmates against level 3 inmates without any employee discipline. For example, on or about August 3RD, 2022 at approximately 5:45am, Officer Sanchez intentionally pitted two Hispanic inmates against Plaintiff, an African–American individual, with the intentions of having the Hispanic inmates assault Plaintiff, because, Plaintiff told Officer Sanchez that he was going to file a grievance against him, however after Core Civic Administration was notified of Officer Sanchez's misconduct, they failed to take action, by turning a blind eye to such misconduct. To Plaintiff's knowledge, no disciplinary action was taken against Officer Sanchez for his misconduct towards Plaintiff.

(108). When officials take no steps to reprimand or terminate their subordinates or otherwise fail to admit that their subordinates conduct was wrong, such can be inferred that there was a policy or custom that was the moving force behind violating the inmates constitutional rights. McRorie v. Shimoda, 795 F.2d 780,784 (9th Cir. 1986).

(109). When prison officials who know or reasonably should know that an inmate is being unconstitutionally treated, and they fail to do anything about it, they may be held liable for their failure to act. Greason v. Kemp, 891 F.2d 829,839–40 (11th Cir. 1990); Johnson v. Pearson, 316 F.Supp. 2d 367, 377–78 (EDVa 2004).

(110). Prison officials "can't just sit on their duff and not do anything" to prevent constitutional right violations. Alexander v. Perrill, 916 F.2d 1392, 1395 (9th Cir. 1990).

Case Number _____

(iii). A number of courts have held that an inmate grievance could be sufficient to give notice of constitutional and tort violations. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); Reed v. McBride, 178 F.3d 849, 854 (7th Cir. 1999).

(112). Officer Sanchez, a former Core Civic~La Palma employee, is liable in his individual capacity, for his direct participation in violating Plaintiff's Constitutional rights, when he acted with deliberate indifference and/or reckless disregard to Plaintiff's safety by his intentional action of allowing level 4 inmates out in the rotunda with Plaintiff, for the sole purpose of having Plaintiff seriously assaulted or murdered by the level 4 inmates, thus violating Plaintiff's 1st, 8th and 14th Amendments rights to the US Constitution, Article II §§§ 4, 5 and 15 rights to the Arizona Constitution, and State Tort violations of Negligence, and Intentional and/or Negligent Infliction of Emotional Distress.

(113). Grievance Coordinator Angera Volakis, a former Core Civic~La Palma employee is liable in her individual capacity for her in-direct participation in violating Plaintiff's Constitutional rights, after she was placed on notice through the grievance procedure of the substantial risk of serious harm to Plaintiff, by housing him in the same building and compound as level 4 inmates, to whom Volakis acted with deliberate indifference and/or reckless disregard to Plaintiff's safety, when she failed to take reasonable action to remedy said constitutional violations, thus violating Plaintiff's 8th Amendment right to the US Constitution, Article II § 15 right to the Arizona Constitution, and State Tort violations of Negligence and Intentional and/or Negligent Infliction of Emotional Distress.

(114). Deputy Warden Carol Wallace, a Core Civic~La Palma employee, is liable in her individual capacity for her in-direct participation in violating Plaintiff's Constitutional rights, after she was placed on notice through the grievance procedure of the substantial risk of serious harm to Plaintiff, by housing him in the same building and compound as level 4 inmates, to which Wallace acted with with deliberate indifference and/or reckless disregard to Plaintiff's safety, when she failed to take reasonable action to remedy said constitutional violations, thus violating Plaintiff's 8th Amendment right to the US Constitution, Article II § 15 right to the Arizona Constitution, and State Tort violations of Negligence, and Intentional and/or Negligent Infliction of Emotional Distress.

Case Number _____

(115). Deputy Warden Freeland, a ADOC official, who oversees the Core Civic-La Palma facility, is liable in his individual capacity for his in-direct participation in violating Plaintiff's Constitutional rights, after he was placed on notice by Plaintiff on or about May 2022, of the substantial risk of serious harm to Plaintiff, by housing him in the same building and compound as level 4 inmates, to which Freeland acted with deliberate indifference and/or reckless disregard to Plaintiff's safety, when he failed to take reasonable action to remedy said constitutional violations, thus violating Plaintiff's 8th Amendment right to the US Constitution, Article II § 15 right to the Arizona Constitution, and State Tort violations of Negligence and Intentional and/or Negligent Infliction of Emotional Distress.

(116). Warden C. Howard, a Core Civic-La Palma employee, is liable in his individual capacity for his in-direct participation in violating Plaintiff's Constitutional rights, after he was placed on notice, by Plaintiff on or about May 2022 of the substantial risk of serious harm to Plaintiff, by housing him in the same building and compound as level 4 inmates, to which Howard acted with deliberate indifference, and/or reckless disregard to Plaintiff's safety, when he failed to take reasonable action to remedy said constitutional violations, thus violating Plaintiff's 8th Amendment right to the US Constitution, Article II § 15 right to the Arizona Constitution, and State Tort violations of Negligence and Intentional and/or Negligent Infliction of Emotional Distress.

(117). Chief of Security Richard Reyes, a Core Civic-La Palma employee, is liable in his individual capacity for his in-direct participation in violating Plaintiff's Constitutional rights, after he was placed on notice by Plaintiff on or about May 2022, of the substantial risk of serious harm to Plaintiff, by housing him in the same building and compound as level 4 inmates, to which Reyes acted with deliberate, indifference and/or reckless disregard to Plaintiff's safety, when he failed to take reasonable action to remedy said constitutional violations, thus violating Plaintiff's 8th Amendment right to the US Constitution, Article II § 15 right to the Arizona Constitution, and State Tort violations of Negligence, and Intentional and/or Negligent Infliction of Emotional Distress.

(118). SSU Officer M. Martinez, a Core Civic-La Palma employee, is liable in his individual

Case Number _____

capacity for his in-direct participation in violating Plaintiff's Constitutional rights, after he was placed on notice, by Plaintiff on or about May 2022 of the substantial risk of serious harm to Plaintiff, by housing him in the same building and compound as level 4 inmates, to which Martinez acted with deliberate indifference and/or reckless disregard to Plaintiff's safety, when he failed to take reasonable action to remedy said Constitutional violations, thus violating Plaintiff's 8th Amendment right to the US Constitution, Article II § 15 right to the Arizona Constitution, and State Tort violations of Negligence and Intentional and/or Negligent Infliction of Emotional Distress.

(119). David Shinn, the ADC Director — who is responsible for the contract with Core Civic-La Palma facility, is liable in his individual and official capacities for his direct and/or in-direct participation in violating Plaintiff's Constitutional rights, after he was placed on notice through the grievance procedure of the substantial risk of serious harm to Plaintiff, by housing him in the same building and compound as level 4 inmates; to which Shinn acted with deliberate indifference and/or reckless disregard to Plaintiff's safety, when he failed to take reasonable action to remedy said Constitutional violations, thus violating Plaintiff's 8th Amendment right to the US Constitution, Article II § 15 right to the Arizona Constitution, and State Tort violations of Negligence and Intentional and/or Negligent Infliction of Emotional Distress.

(120). Damon Hininger, the CEO for Core Civic, is liable in his individual and official capacities for his direct and/or in-direct participation in violating Plaintiff's Constitutional rights, after he was placed on notice through the grievance procedure of the substantial risk of serious harm to Plaintiff by housing him in the same building and compound as level 4 inmates, to which Hininger acted with deliberate indifference and/or reckless disregard to Plaintiff's safety, when he failed to take reasonable action to remedy said Constitutional violations; thus violating Plaintiff's 8th Amendment right to the US Constitution, Article II § 15 right to the Arizona Constitution, and State Tort violations of Negligence and Intentional and/or Negligent Infliction of Emotional Distress.

(121). The State of Arizona, by and through, David Shinn; John Weiss; ADW Bunches; DW Freeland; Warden C. Howard; Richard Reyes; Matthew Weidman; SSU Officer M. Martinez; Officer Sanchez; Argero Volakis; DW Carol Wallace; and Damon Hininger, all using their official power, acted on behalf of

Case Number _____

1  the State of Arizona, under Color of State Law, Rivera v. LaPorte, 896 F.2d 691, 696 (2d Cir. 1990),

2  intentionally violated Plaintiff's Constitutional rights, and after they were all sufficiently placed

3  on notice, either directly from Plaintiff or through the grievance procedure, of the substantial

4  risk of serious harm to Plaintiff's safety, by housing him in the same building and

5  compound as the level 4 inmates, the State of Arizona acted with deliberate indifference

6  and/or reckless disregard to Plaintiff's safety, when the State of Arizona failed to take

7  reasonable action to remedy the Constitutional violations or State Tort violations, thus

8  violating Plaintiff's 8th Amendment right to the U.S. Constitution, Article II, § 15 right to the

9  Arizona Constitution, and State Tort violations of Negligence and Intentional and/or

10  Negligent Infliction of Emotional Distress.

11  (112). Supervisory Officials David Shinn; DW Freeland; ADW Burgers; Damon Huniger; C. Howard; and

12  Carol Wallace are all liable in their individual and official capacities for their Negligence in Supervision

13  and/or Training of Officer Sanchez. These named Supervisory Officials failed to supervise and/or

14  train Officer Sanchez, and as a result of such gross Negligence, Officer Sanchez intentionally

15  violated Plaintiff's Constitutional rights and inflicted State Tort injuries upon Plaintiff. Therefore, the

16  aforementioned Supervisory Officials are liable for a State Tort claim of Negligent in

17  Supervision or Training of Subordinates.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

Case # CV-23-00586-PHX-DJH (DMF)

# Cover Sheet

## Administrative Remedies

Kevin E. Green

V.

State of Arizona, et al.,



**Arizona Department of Corrections**
**Rehabilitation and Reentry**

**Inmate Informal Complaint Resolution**

Complaints are limited to one page and one issue.

Please print all information.

Case # 22-043711

| INMATE NAME *(Last, First M.I.) (Please print)* | ADCRR NUMBER | INSTITUTION/UNIT | DATE *(mm/dd/yyyy)* |
|---|---|---|---|
| Green, Kevin E | 150869 | Eloy LaPalma | 8-3-22 |

| TO | LOCATION |
|---|---|
| Staff | CO111 |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

ON 8-3-22 @ 5:45AM we were let out for rec And to get ice. A short time before this level 4's were out Attempting to get ice. However they were made to lock down so we (Level 3's) could go to rec And get ice. As we were getting ice officer Sanchez who was working Cocopah Bravo came over And ask if we could save some ice for his pod, I said yes sir no problem. As we were filling up A 48 Court bucket office Sanchez ask us to stop midway. I ask him why, As inmate Dillon continued to fill our bucket. Officer Sanchez stated they needed to fill their buckets up. I told officer Sanchez that we had one bucket compared to their three buckets And that the ice machine was full, so their was enough ice for everyone. I also told officer Sanchez that everyone is Equal And they Are not superior, And that he is wrong. This infuriated officer Sanchez And he stated we would never get ice Again. Officer Sanchez stormed off saying "mayeta" pushed his button for his Door to be opened And let out 2 Level 4's officer Sanchez Deliberately put my life safety in immediate Danger. This violates my 8th Amendment rights. My propose Resolution is for officer Sanchez to be terminated Along with the control officer who opened the Door placing my life in grave Danger.

| INMATE SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|
| Kevin C. E. | 8-3-22 |

RECEIVED
AUG 0 3 2022

Have you discussed this with institution staff?   ☐ Yes   ☐ No

If yes, give the staff member name:

Page 35

Distribution:  INITIAL: White and Canary or Copies – Grievance Coordin~~ate~~
FINAL: White – Inmate; Canary – Grievance Coordinator F

802-11
11/16/21



## Inmate Grievance/Informal Response Notice
## Non-Medical

**Inmate Name:** KEVIN GREEN

**ADC#:** 150869

**Prison/Unit:** LA PALMA/LA PALMA UNIT

**Bldg/Bed:** J13 CM1CC128L

## Case #:22-043711

## Informal Complaint

**Type:** Informal Response

**Date Received:** 08/03/2022 11:49 AM

**Response Author:** GILSTRAP, JENNIFER

**Responded On:** 08/11/2022 02:02:01 PM

**Decision:**

## Case Details

**Case Number:** 22-043711

**Grievance Status:** Open

## Case Data

**Prison of Complaint:** LA PALMA

**Opened Date:** 08/03/2022 11:49 AM

**Grievance Category:** Staff

**Unit of Complaint:** LA PALMA UNIT

**Grievance Stage:** Informal Answered

## Informal Grievance Response

**Grievance Date:** 08/03/2022 12:00:00 AM

**Response Due:** 08/24/2022 11:50 AM

**Issue:** Staff

**Responder:** GILSTRAP, JENNIFER

**Response:** The Informal Complaint dated August 3, 2022, received on August 3, 2022, has been reviewed. Allegations of staff misconduct are taken seriously and have been forwarded to Administrative Staff. Allegations of staff misconduct are treated confidentially and you will not be notified of the outcome or any corrective action that may have been taken. This matter is resolved at the informal level.

⌐Unprocessed

**Officer's Name:** JENNIFER GILSTRAP

**Notice:** If you are dissatisfied with the Informal Complaint Response, you may file a formal grievance (form 802-1 Inmate Grievance, and/or form 802-7 GF Supplement) within five (5) workdays from receipt of the above response to the Grievance Coordinator by:

• Placing a single complaint on a single Inmate Grievance form.

**NOTE:** If multiple unrelated issues are on a single form or if a duplicate complaint is filed, the grievance shall be rejected and returned unprocessed.



**Arizona Department of Corrections
Rehabilitation and Reentry**

**Inmate Grievance**

*Pg 1 of 2*

| RECEIVED BY | |
|---|---|
| TITLE *CO* | |
| BADGE NUMBER 437 498 98 | DATE *(mm/dd/yyyy)* 08/15/2022 |

*Note:* You may appeal the Grievance Coordinator's decision by filing form 802-3, within 10 calendar days of receipt of this notice.

| INMATE NAME *(Last, First M.I.) (Please print)* Green, Kevin E. | ADCRR NUMBER 150869 | DATE *(mm/dd/yyyy)* 08-15-2022 |
|---|---|---|
| INSTITUTION/UNIT La Palma | CASE NUMBER 22-043711 | |

TO: GRIEVANCE COORDINATOR

**Description of Grievance** *(To be completed by the Inmate)*

This inmate grievance is in-regards to Core Civic Officer calling me a racial slur and deliberately opening the level 4's door in his attempt to have me assaulted by the inmates. The Constitution requires prison officials to provide "reasonable safety" for prisoners, Farmer v. Brennan, 511 US 825, 844 (1994), which means prison officials must take reasonable measures to protect prisoners from assaults by other inmates, (Id at 833) and when they fail to do so, Courts may award damages to injured prisoners. see, e.g., Cantu v. Jones, 293 F.3d 839, 839-44 (5th Cir 2002); Hutchinson v. McCabee, 168 F.Supp. 2d 101, 102-04 (S.D.N.Y., 2001); Miller v. Shelby Cnty., 93 F.Supp.2d 892, 902 (N.D. Tenn. 2000). In order for officials to be held deliberate indifference towards a prisoners safety, the prisoner must show that prison officials displayed "deliberate indifference" or "reckless disregard" for their safety by failing to "act reasonably" in ~~response~~ response to danger, Farmer, 511 US at 834-47. This means that prisoners must show that prison personnel "knew" of and disregard[ed]an excessive risk to

**Proposed Resolution** *(What informal attempts have been made to resolve the problem? What action(s) would resolve the problem?)*

My proposed resolution is that level 3 inmates be moved away from the level 4 inmates. I want to be compensated for the mental distress that the officer placed me in. I want to be reclassed to a level 2 and sent to Eagle Point in Buckeye so I can work as a RSS, in the re-entry program.

| INMATE'S SIGNATURE | DATE *(mm/dd/yyyy)* 08/15/2022 | GRIEVANCE COORDINATOR'S SIGNATURE | DATE *(mm/dd/yyyy)* 08/15/2022 8/19/202 |
|---|---|---|---|

| Action taken by | Documentation of Resolution or Attempts at Resolution. |
|---|---|
| | |
| | |
| | |
| | |

| STAFF MEMBER'S SIGNATURE | BADGE NUMBER | RECEIVED DATE *(mm/dd/yyyy)* AUG 1 9 2022 BY: |
|---|---|---|

DISTRIBUTION: INITIAL: White and Canary or Copies – Grievance Coordina[tor] [D]ate
FINAL: White – Inmate; Canary – Grievance File

802-1
11/10/20



**Arizona Department of Corrections
Rehabilitation and Reentry**

**Inmate Grievance – GF Supplement**

Pg 2 of 2

| INMATE'S NAME *(Last, First M.I.) (Please print)* | ADCRR NUMBER | INSTITUTION/UNIT | CASE NUMBER |
|---|---|---|---|
| Green, Kevin E | 150869 | La Palma | 22-043711 |

inmates health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (Id at 837). The Constitution is violated "where defendants know of the danger or where the threat of violence is so substantial or pervasive that their knowledge could be inferred, and yet defendants fail to embrace a policy or take other reasonable steps which may have prevented harm." Goka v. Bobbitt, 862 F. 2d 646, 651 (7th Cir. 1988). When the evidence that a risk is obvious, a judge or jury can conclude that defendants had actual knowledge of it. Farmer, 511 US at 842-43. Defendant's do not have to know the precise nature of the risk, as long as they know that there is a serious risk to the prisoners safety. Velez v. Johnson, 395 F.3d 732, 736 (7th Cir. 2005) Officials do not have to harbor a purpose of harming prisoners, or believe that it will actually occur, as long as they have actual knowledge of the risk. Farmer, 511 US at 836, 842. In order for prison officials to be held liable, they must disregard a risk that is "excessive" or poses a "substantial risk of serious harm." (Id at 834, 837). Here, the Core Civic Officer acted with deliberate indifference to my safety when he attempted to have higher level inmates assault me. This violated departmental order by mixing Level 3's with level 4's. Furthermore, the officer violated my Constitutional rights when he attempted to have me assaulted by other inmates. This officer caused me great fear for my safety and has caused me severe mental distress. Despite of my complaints to Core Civic, as well as my family making complaints to administration, Core Civic Administration has simply turned their head and ignored our complaints and concerns. There is a ~~recurring~~ recurring theme, which is, Core Civic officials continue to ~~to~~ place my life safety in grave danger by allowing level 4 inmates around me. This practice needs to immediately stop.

| SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|
| Kevin Green E. | 08-15-22 |

INITIAL DISTRIBUTION:   GF Supplement – White and Canary or Copi~~~~   ~~~~ator
Pink, or Copy – Inmate

FINAL DISTRIBUTION:   White or Copy – Inmate
Canary or Copy – Grievance File

Page 38

RECEIVED
AUG 1 9 2022
BY: ........................

# Inmate Grievance/Formal Response Notice
## Non-Medical

**Inmate Name:** KEVIN GREEN

**ADC#:** 150869

**Prison/Unit:** LA PALMA/LA PALMA UNIT

**Bldg/Bed:** J13 CM1CC128L

## Case #:22-043711

## Formal Grievance

**Type:** Formal Approve

**Date Received:** 08/03/2022 11:49:00 AM

**Response Author:** Carol Wallace

**Responded On:** 09/06/2022 02:16:10 PM

**Decision:** Resolved

## Case Details

**Case Number:** 22-043711

**Grievance Status:** Resolved

## Case Data

**Prison of Complaint:** LA PALMA

**Opened Date:** 08/03/2022 11:49:00 AM

**Grievance Category:** Staff

**Unit of Complaint:** LA PALMA UNIT

**Grievance Stage:** Formal Answered

## Formal Grievance Response

**Responder Name:** Argero Volakis

**Due Date:** 09/27/2022 02:16:10 PM

**Date/Time:** 09/06/2022 02:16:10 PM

**Result:** Resolved

**Response:** The inmate grievance dated 8/15/2022, received 8/19/2022, has been reviewed. Within the inmate grievance you have cited legislative cases and stated that the CoreCivic officer acted with deliberate indifference to your safety, violated department order and that CoreCivic administration have turned their head and ignored your complaints and concerns. Your proposed resolution is that Level 3 inmates be moved away from Level 4 inmates, for you to be compensated for the mental distress and for you to be reclassified to a Level 2 and sent to Eagle Point in Buckeye. A review of the informal stage and processes reflect that the allegation of staff misconduct was forwarded to administrative staff and the investigation was completed. You will not be advised of the outcome of that investigation nor any action possibly taken with staff. Compound 2 has opened as of today, 9/6/2022, for the housing of Level 3 inmates. The facility is in the process of moving all Level 3 inmates to Compound 2 which will eliminate the need for secure movements of Level 3 inmates on the Level 4 Compound 1 yard. It is out of the jurisdiction of LPCC Grievance to address compensation for mental distress, classification level or transfer to another facility. This matter is resolved.

⌐Override          ⌐Data Input Error          ⌐Unprocessed          ⌐Extension

**RestitutionRecommended:** No

*Page 39*



**Approver Name:** Carol Wallace

**Due Date:** 09/27/2022 02:16:10 PM

**Date/Time:** 09/07/2022 01:16:06 PM

**Result:** Resolved

**Deputy Warden:** Carol Wallace

**Notice :** You may elect to appeal the decision of the Deputy Warden to the Director (Grievance Appeal form 802-3 Inmate Grievance, and/or form 802-7 GF Supplement) within five (5) workdays from receipt of the above response to the Grievance Coordinator by Ensuring the grievance procedure within their assigned unit and institution has been exhausted.



**Arizona Department of Corrections**
**Rehabilitation and Reentry**

*Pg 1 of 2*

**Inmate Grievance Appeal**

| | Please type or print in black or blue ink. (To be completed by staff member initially receiving appeal) |
|---|---|

| The inmate may appeal the Deputy Warden's decision to the Director by requesting the appeal on this form. | Received By: *Co Jurado* |
|---|---|
| | Title: *Co II* |
| | Badge #: *438 03268* |
| | Date: (mm/dd/yyyy) *09/06/2022* |

**Please Print**

| INMATE NAME (Last, First M.I.) (please print) *Green, Kevin E.* | ADCRR NUMBER *150869* | DATE (mm/dd/yyyy) *09/06/2022* |
|---|---|---|
| INSTITUTION/UNIT *La Palma* | CASE NUMBER *22-043711* | |

TO: *Director*

I am appealing the decision of ___NO RESPONSE TO INMATE GRIEVANCE___ for the following reasons:

*Pursuant to D.O. 802.3.0 § 3.6, "Within 15 workdays following receipt of the Formal Grievance, the Deputy Warden shall issue a written response to the inmate." "If an inmate does not receive a response within the time period specified, his/her time to proceed to the next stage of the grievance process is the same as if he/she had received a response. The time to proceed to the next stage of the grievance process begins to run the day after a response was due back to the inmate." See, D.O. 802.1.0 § 1.10.1. My Inmate Grievance was turned in on 8/15/22 to CO # 437 498 98 and the time frame for the Deputy Warden to respond to my grievance is now expired, warranting this Appeal. My initial complaint is in regards to a Core Civic Officer calling me a racial slur and deliberately opening the level 4's door, in his attempt to be assaulted by the higher level custody inmates. The Constitution requires prison officials to provide*

| INMATE'S SIGNATURE | DATE (mm/dd/yyyy) *09/06/2022* | GRIEVANCE COORDINATOR'S SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|---|---|

| RESPONSE TO INMATE BY | LOCATION |
|---|---|
| | |

| STAFF SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|

DISTRIBUTION: INITIAL: White & Canary – Grievance Coordinator
Pink – Inmate
FINAL: White – Inmate
Canary – Grievance File

802-3
2/3/21



**Arizona Department of Corrections
Rehabilitation and Reentry**

Pg 2 of 2

**Inmate Grievance – GF Supplement**

| INMATE'S NAME (Last, First M.I.) (Please print) | ADCRR NUMBER | INSTITUTION/UNIT | CASE NUMBER |
|---|---|---|---|
| Green, Kevin E. | 150869 | La Palma | 22-043711 |

"reasonable safety" for prisoners, Farmer v. Brennan, 511 US 825, 844 (1994), which means prison officials must take reasonable measures to protect prisoners from assaults by other inmates, (Id at 833), and when they fail to do so, Courts may award damages to injured prisoners, see, e.g., Cantu v. Jones, 293 F.3d 839, 839-44 (5th Cir. 2002); Hutchinson v. McAbee, 168 F. Supp. 2d 101, 102-04 (S.D.N.Y. 2001); Miller v. Shelby Cnty., 93 F. Supp. 2d 892, 902 (N.D. Tenn 2000). In order for officials to be held deliberate indifference towards a prisoners safety, the prisoner must show that prison officials displayed "deliberate indifference" or "reckless disregard" for their safety by failing to "act reasonably" in response to danger. Farmer, 511 US at 834-47. This means that prisoners must show that prison personnel "[knew] of and disregard[ed] an excessive risk to inmates health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (Id at 837). The Constitution is violated "where defendants know of the danger or where the threat of violence is so substantial or pervasive that their knowledge could be inferred, and yet defendants fail to embrace a policy or take other reasonable steps which may have prevented harm." Gioka v. Bobbitt, 862 F.2d 646, 651 (7th Cir. 1988). When the evidence that a risk is obvious, a judge or jury can conclude that defendants had actual knowledge of it. Farmer, 511 US at 842-43. Defendant's do not have to know the precise nature of the risk, as long as they know that there is a serious risk to the prisoners safety. Velez v. Johnson, 395 F.3d 732, 736 (7th Cir. 2005). Officials do not have to harbor a purpose of harming prisoners, or believe that it will actually occur, as long as they have actual knowledge of the risk. Farmer, 511 US at 836, 842. In order for prison officials to be held liable, they must disregard a risk that is "excessive" or poses a "substantial risk of serious harm." (Id at 834, 837). Here, the Core Civic officer acted with deliberate indifference to my safety when he attempted to have higher level custody inmates assault me. This violates Department Order by mixing level 3 inmates with level 4 inmates. Furthermore, the officer violated my 8th Amendment right, when he attempted to have two other inmates assault me. This officer has caused me great fear for my safety and has caused me sever mental distress. Despite of my direct complaints to Core Civic officials, as well as having my family make complaints to administration officials, Core Civic Admin has simply ignor my complaint and turned a blind eye to such. Here, there seems to be a reoccurring theme, which is, Core Civic continues to place my life safety in grave dange by allowing level 4 inmates to come in contact with me. This ~~unconstitual~~ Unconstitutional practice needs to immediately stop. At this juncture, I'm requesting the video recording which depicts the officer intentionally letting the two level 4 inmates out of Bravo pod on the date in question.

| SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|
| | 09/06/2022 |

INITIAL DISTRIBUTION:   GF Supplement – White and Canary or Copies -
Pink, or Copy - Inmate

FINAL DISTRIBUTION:   White or Copy – Inmate
Canary or Copy – Grievance File

802-7
2/3/21

Page 42



*First formal Complaint to Staff*

**Arizona Department of Corrections
Rehabilitation and Reentry**

**Inmate Informal Complaint Resolution**

*Complaints are limited to one page and one issue.*

*Please print all information.*

| INMATE NAME *(Last, First M.I.)* (Please print) | ADCRR NUMBER | INSTITUTION/UNIT | DATE *(mm/dd/yyyy)* |
|---|---|---|---|
| Green, KevinE | 150869 | E101/LaPalma | 6-15-22 |

| TO | LOCATION |
|---|---|
| Grievance Cord | C0111 |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

ON 6-15-22 @ 9:27 AS ADW Burges WAS in the Building
My unit Door WAS OPEN while over 25 level 4's
Inmates were outside there Unit. I AM currently
being housed in the Same Building COCOPAL with
level 4 Inmates EVEN though I AM A level 3
Inmate. In COCOPAL Building there Are 3
housings units Alpha Bravo And Charlie. Level
3 Inmates Are in charlie, And once the Door is
OPEN there is About 5 yards between EACH Door.
Level 4 Inmate Consider our POD PC so we
Are threaten Daily. ALL of us Come from EAST
unit where we was in honor Dorms, Programming.
And EVEN Teaching life Skills Classes. Now I
have Been forced PUT iN A DANgerous ENVironment
where my life is in jeopardy. My points is
9-10 which makes me A Level 1 INMATE. If I
Didn't hAVE 7 years left on my record. And that's
Debatible AS Well. However AS of Now
Core Civic is Breaking the Department order
policy. And Violating my Constitutional Rights
I would like AN OVER RIDE And moved to
Lewis EAGLE point where I can work AS
AN RSS Recovery Support Specialist iN the
Reintry Program. As of Now Im just
Sitting here Doing Nothing because of Medical
issues

| INMATE SIGNATURE | DATE *(mm/dd/yyyy)* |
|---|---|
| K. C. E. | 6-15-22 |

Have you discussed this with institution staff?   ☐ Yes   ☐ No

If yes, give the staff member name:

Page 43

Distribution:   INITIAL: White and Canary or Copies – Grievance Coordinate ... ate
FINAL: White – Inmate; Canary – Grievance Coordinator File

802-11
11/16/21